IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KYTCH, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   C.A. No. 22-279-MN |
| | ) |
| MCDONALD'S CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT MCDONALD'S CORPORATION'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS OR FOR A MORE DEFINITE STATEMENT AS TO BUS & PROF CODE § 17200 CLAIM

YOUNG CONAWAY STARGATT
 & TAYLOR, LLP

Catherine Y. Lui
Nicole Gelsomini
The Orrick Building
405 Howard Street
San Francisco, CA 94105
(415) 773-5700
clui@orrick.com
ngelsomini@orrick.com

Kristopher R. Wood
2050 Main Street, Suite 1100
Irvine, CA 92614
(949) 567-6700
kristopher.wood@orrick.com

Dated: April 22, 2022

Elena C. Norman (No. 4780)
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
enorman@ycst.com
agaza@ycst.com
swilson@ycst.com

*Attorneys for Defendant
McDonald's Corporation*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    NATURE AND STAGE OF THE PROCEEDINGS ........................................ 2

III.   SUMMARY OF THE ARGUMENT ................................................................ 2

IV.   FACTUAL BACKGROUND REGARDING KYTCH'S ALLEGATIONS ................. 3

V.    LEGAL STANDARD ....................................................................................... 5

VI.   ARGUMENT ..................................................................................................... 6

     A.    Kytch's Lanham Act Claim Fails Because Kytch Cannot Plausibly Allege A Commercial Advertisement Or Promotion ......................................... 6

         1.    The Field Brief Did Not Concern Defendant's Product (Element 3) ........ 7

         2.    The Field Brief Was Not "Commercial Speech" (Element 1) .................. 9

     B.    Kytch's Statutory State Law Claims Fail Under Rule 12(b)(6) ........................... 11

         1.    Kytch's FAL Claim Fails As A Matter Of Law ...................................... 11

         2.    Kytch's Deceptive Trade Practices Claim (The UCL) Fails As A Matter Of Law ...................................................................................... 12

     C.    Kytch's State Common Law Claims Fail As A Matter Of Law ......................... 14

         1.    California Law Should Apply ................................................................. 14

         2.    Kytch's Tortious Interference With Contract Claim Fails Because Kytch Cannot Plausibly Allege Knowledge Of The Contracts .............. 16

         3.    Kytch's Intentional Interference With Business Expectancy ("IIBE") Claim Fails Because Kytch Does Not Plausibly Allege Knowledge Of The Specific Relationships At Issue .............................. 17

         4.    Kytch's Negligent Interference Claim Fails Because Kytch Does Not Sufficiently Allege Any Business Relationships ............................. 18

         5.    Kytch's Trade Libel Claim Fail Because Kytch Failed To Plead Special Damages With Particularity Under Rule 9(g) ........................... 19

VII.  CONCLUSION ................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*4NYSYS Amer. Inc. v. Koninklijke Philips Elec. NV*,
   C.A. No. 2:11-CV-6075-JHN-MANx, 2012 WL 13008980 (C.D. Cal. Jan. 23,
   2012) ........................................................................................................................19

*Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*,
   581 F. Supp. 2d 654 (D. Del. 2008) ...........................................................................17, 18

*Acierno v. Haggerty*,
   C.A. No. 04-1376-KAJ, 2005 WL 3134060 (D. Del. Nov. 23, 2005) ...................................15

*Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*,
   42 F.3d 1421 (3d Cir. 1994) ...........................................................................................8

*Anesthesia Servs., P.A. v. Anesthesia Advantage, P.C.*,
   C.A. No. N11C-03-005-MJB, 2013 WL 3352672 (Del. Super. Ct. June 27,
   2013) ........................................................................................................................16

*Aoki v. Benihana, Inc.*,
   839 F. Supp. 2d 759 (D. Del. 2012) ...............................................................................20

*Ariix, LLC v. NutriSearch Corporation*,
   985 F.3d 1107 (9th Cir. 2021) ........................................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................5, 19

*Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*,
   684 F. Supp. 2d 541 (D. Del. 2010) .................................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................................10, 19

*Bolger v. Youngs Drug Prod. Corp.*,
   463 U.S. 60 (1983) ................................................................................................9, 11

*Bret Binder v. Weststar Mortg., Inc.*,
   C.A. No. 14-7073, 2016 WL 3762710 (E.D. Pa. July 13, 2016) ..........................................8

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) .............................................................................................13, 14

i

*CHW Grp., Inc. v. Better Bus. Bureau of New Jersey, Inc.*,
    C.A. No. 11-3261-JAP, 2012 WL 426292 (D.N.J. Feb. 8, 2012)...........................................7

*Cornette v. Graver*,
    473 F. Supp. 3d 437 (W.D. Pa. 2020) ...........................................................................................9

*Cullen v. Netflix, Inc.*,
    No. 5:11-1199-EJD, 2013 WL 140103 (N.D. Cal. Jan. 10, 2013) .........................................13

*Elizabeth M. Byrnes, Inc. v. Fountainhead Com. Cap., LLC*,
    No. CV-20-4149-DDP-RAOx, 2021 WL 3501518 (C.D. Cal. Aug. 6, 2021) ......................12

*In re Exxon Mobil Corp. Sec. Litig.*,
    500 F.3d 189 (3d Cir. 2007)......................................................................................................5

*Facebook, Inc. v. Brandtotal Ltd.*,
    No. 20-CV-7182-JCS, 2021 WL 2354751 (N.D. Cal. June 9, 2021) .....................................14

*Facebook, Inc. v. BrandTotal Ltd.*,
    No. 20-CV-7182-JCS, 2021 WL 3885981 (N.D. Cal. Aug. 31, 2021)....................................14

*Facenda v. N.F.L. Films, Inc.*,
    542 F.3d 1007 (3d Cir. 2008)....................................................................................................8

*FilmOn.com Inc. v. DoubleVerify Inc.*,
    7 Cal. 5th 133 (2019) ..............................................................................................................11

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009)......................................................................................................5

*Fox Hollow of Turlock Owners' Ass'n v. Sinclair*,
    No. 1:03-CV-5439, 2007 WL 987873 (E.D. Cal. Mar. 30, 2007).........................................14

*Frompovicz v. Niagara Bottling, LLC*,
    337 F. Supp. 3d 498 (E.D. Pa. 2018) .......................................................................................8

*Gilmour v. Bohmueller*,
    C.A. No. 04-2535, 2005 WL 241181 (E.D. Pa. Jan. 27, 2005) ...............................................5

*GOLO, LLC v. HighYa, LLC*,
    310 F. Supp. 3d 499 (E.D. Pa. 2018) .....................................................................................10

*Hecksher v. Fairwinds Baptist Church, Inc.*,
    115 A.3d 1187 (Del. 2015) ......................................................................................................17

*Holmes v. Colonial Sch. Dist.*,
    C.A. No. 09-795-GMS, 2010 WL 4918721 (D. Del. Nov. 24, 2010) ......................................6

*Home Decor Ctr., Inc. v. Google, Inc.*,
  No. CV 12-5706-GW-SHx, 2013 WL 10858861 (C.D. Cal. May 9, 2013) .....................17, 18

*Hughes v. United Parcel Serv., Inc.*,
  639 F. App'x 99 (3d Cir. 2016) ...................................................................................................10

*Incyte Corp. v. Flexus Biosciences, Inc.*,
  C.A. No. N15C-09-55-MMJ-CCLD, 2017 WL 7803923 (Del. Super. Ct. Nov.
  1, 2017) .........................................................................................................................................19

*J'Aire Corp. v. Gregory*,
  24 Cal. 3d 799 (1979) ..................................................................................................................14

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ..........................................................................................................12, 18

*Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*,
  844 F. Supp. 2d 519 (D. Del. 2012) ..............................................................................................5

*LegalForce RAPC Worldwide P.C. v. DeMassa*,
  No. 18-43-MMC, 2020 WL 4747909 (N.D. Cal. Aug. 17, 2020) ...........................................13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014)........................................................................................................................6

*Lozano v. AT & T Wireless Servs., Inc.*,
  504 F.3d 718 (9th Cir. 2007) ........................................................................................................13

*Mou v. SSC San Jose Operating Co. LP*,
  415 F. Supp. 3d 918 (N.D. Cal. 2019) ........................................................................................14

*Nat'l Med. Transp. Network v. Deloitte & Touche*,
  62 Cal. App. 4th 412 (1998) ........................................................................................................18

*Ninespot, Inc. v. Jupai Holdings Ltd.*,
  C.A. No. 18-144-RGA, 2019 WL 1650065 (D. Del. Apr. 17, 2019) .......................................5

*NovelPoster v. Javitch Canfield Grp.*,
  No. 13-CV-5186-WHO, 2014 WL 10556991 (N.D. Cal. Aug. 14, 2014) ..............................13

*OC Tint Shop, Inc. v. CPFilms, Inc.*,
  C.A. No. 17-1677-RGA, 2018 WL 4658211 (D. Del. Sept. 27, 2018) ...................................14

*Passport Health, Inc. v. Travel Med, Inc.*,
  No. 2:09-CV-01753-GEB-JFM, 2009 WL 3824743 (E.D. Cal. Nov. 16, 2009)....................20

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*,
  133 Cal. App. 4th 658 (2005) ......................................................................................................17

*Redbox Automated Retail, LLC v. Buena Vista Home Ent., Inc.*,
   399 F. Supp. 3d 1018 (C.D. Cal. 2019) ...................................................................11

*Registered Agent Sols., Inc. v. Corp. Serv. Co.*,
   C.A. No. 21-786-SB, 2022 WL 911253 (D. Del. Mar. 28, 2022) ...........................6

*Reybold Grp. of Companies, Inc. v. Does 1-20*,
   323 F.R.D. 205 (D. Del. 2017) ................................................................................7

*Rezec v. Sony Pictures Ent., Inc.*,
   116 Cal. App. 4th 135 (2004) ................................................................................11

*Royal Holdings Techs. Corp. v. IP Video Mkt. Info Inc.*,
   No. 2:20-CV-4093SB-PLAx, 2020 WL 8225666 (C.D. Cal. Dec. 18, 2020) .................19, 20

*Santa Fe Properties, LP v. Source Bioscience, Inc.*,
   No. CV20-10727-JFW-PVCx, 2021 WL 6104156 (C.D. Cal. Feb. 10, 2021).......................18

*Shapiro v. UJB Fin. Corp.*,
   964 F.2d 272 (3d Cir. 1992).....................................................................................5

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) .................................................................................12

*Strauss v. Angie's List, Inc.*,
   951 F.3d 1263 (10th Cir. 2020) ...............................................................................7

*Synygy, Inc. v. Scott-Levin, Inc.*,
   51 F. Supp. 2d 570 (E.D. Pa. 1999), *aff'd*, 229 F.3d 1139 (3d Cir. 2000)................................6

*Travelers Indem. Co. v. Lake*,
   594 A.2d 38 (Del. 1991) ........................................................................................15

*U.S. Cap. Partners, LLC v. AHMSA Int'l, Inc.*,
   No. 12-6520-JSC, 2013 WL 594285 (N.D. Cal. Feb. 14, 2013) ...........................12

*Valley Forge Mil. Acad. Found. v. Valley Forge Old Guard, Inc.*,
   24 F. Supp. 3d 451 (E.D. Pa. 2014) .........................................................................9

*In re Vioxx Class Cases*,
   180 Cal. App. 4th 116 (2009) ................................................................................12

*Winchester Mystery House, LLC v. Glob. Asylum, Inc.*,
   210 Cal. App. 4th 579 (2012) ................................................................................16

**Statutes**

28 U.S.C. § 1367(c) ..................................................................................................3

28 U.S.C. § 1367(c)(3)...................................................................................................11

Cal. Bus. & Prof. Code § 17200 .....................................................................................2

Cal. Bus. & Prof. Code §17535 .....................................................................................12

Cal. Bus & Prof. Code § 17500 .......................................................................2, 6, 11, 12

Lanham Act § 43(a) (15 U.S.C. § 1125(a)) ...........................................................1, 2, 4, 6

Lanham Act § 43(a)(1)......................................................................................................6

**Other Authorities**

Fed. R. Civ. P. 8 ................................................................................................... *passim*

Fed. R. Civ. P. 9 .................................................................................................2, 3, 5, 13

Fed. R. Civ. P. 9(b) ...........................................................................................5, 6, 7, 12

Fed. R. Civ. P. 9(g) ...........................................................................................5, 19, 20

Fed. R. Civ. P. 12(b)(1)......................................................................................1, 3, 11

Fed. R. Civ. P. 12(b)(6)...................................................................................1, 2, 3, 11

Fed. R. Civ. P. 12(e) ...........................................................................................3, 6, 14

Restatement (Second) of Conflict of Laws §§ 6(2)(f),145, 150, 151 ....................15, 19

Restatement (Second) of Torts § 623(A) .........................................................................19

## I.   __INTRODUCTION__

Kytch, Inc.'s ("Kytch") Complaint against McDonald's Corp. ("McDonald's") should be dismissed under Rule 12(b)(6) because Kytch fails to state a claim for relief on any of the seven claims it asserts.  Further, because Kytch's sole federal claim under Lanham Act § 43(a) (15 U.S.C. § 1125(a)) fails, the Court should dismiss Kytch's state law claims under Rule 12(b)(1).

In its Complaint, Kytch has woven a sinister, yet false, story about McDonald's' alleged attempt to drive Kytch—which makes an aftermarket device that is used to purportedly help repair ice cream machines in some of McDonald's' franchise owner-operators' ("franchisees") restaurants—out of business.  Kytch claims McDonald's destroyed its business by publishing false statements regarding potential safety issues with Kytch's device to McDonald's' franchisees in an edition of McDonald's' "Field Brief" weekly newsletter ("Field Brief").  Kytch further alleges McDonald's is part of a vast conspiracy to destroy Kytch's business out of a desire to protect an alleged "repair racket" run by one of McDonald's' soft serve ice cream machine suppliers—Taylor Company ("Taylor").  Kytch also claims McDonald's induced franchisee Tyler Gamble ("Gamble") and others to breach non-disclosure agreements by providing confidential information on its products—the Kytch Solution Device ("KSD") and Kytch Solution Platform ("KSP")—and assisting Taylor affiliate Powerhouse Dynamics ("PHD") in developing a competing product called Open Kitchen.  While all of this makes for great "clickbait" headlines, it is simply a work of fiction.  There was no conspiracy to destroy Kytch's business or to protect Taylor's so-called repair racket.

As to any equipment used in McDonald's' restaurants, safety is paramount.  Vendors must go through rigorous testing before becoming approved suppliers.  The testing and approval process is meant to ensure the equipment used in McDonald's' restaurants will not harm users or compromise food safety, among other safety concerns.  As made clear throughout its Complaint,

Kytch never undertook any efforts to meet McDonald's' testing requirements.  Accordingly, the Field Brief's statements on Kytch's potential safety risks reflect McDonald's' good faith efforts to warn franchisees of serious potential risks arising from the KSD's apparent ability to remotely control Taylor's ice cream machines.  Kytch further claims the Field Brief was an advertisement about Open Kitchen, Taylor and PHD's competing product.  But the Field Brief cannot constitute false advertising under the Lanham Act or parallel California statutes as the Field Brief was not even about a McDonald's product.  As to Kytch's theories on McDonald's' tortious interference, they are pled through conclusory allegations that fall apart upon further scrutiny.

For the reasons explained below, each of the claims is fatally lacking in plausible factual allegations to support one or more essential elements.  Kytch's claims should be dismissed.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

In this lawsuit, filed on March 1, 2022, Kytch asserts seven claims against McDonald's, all premised on either (1) McDonald's alleged attempts to obtain confidential information about the KSD from franchisees to allegedly aid the development of Open Kitchen in violation of the franchisees' Kytch Trial Agreements ("KTA") (tortious interference with contract, intentional interference with prospective economic advantage ("IIBE"), and negligent interference with prospective economic advantage ("NIBE")); and/or (2) the publication of the Field Brief containing alleged false advertisements and/or disparaging statements about the KSD and KSP (False Advertising under Lanham Act § 43(a) (15 U.S.C. § 1125(a)); False Advertising under Cal. Bus & Prof. Code § 17500 ("FAL"); Trade Libel; IIBE; NIBE; and "Deceptive Trade Practices" under Cal. Bus. & Prof. Code § 17200 (*i.e.*, unfair competition or "UCL")).

## III.    SUMMARY OF THE ARGUMENT

1)    The Court should dismiss Kytch's Lanham Act claim with prejudice under Rule 12(b)(6).  Under Rules 8 and Rule 9, the latter of which applies to the Lanham Act claim, Kytch

has not and cannot plead at least the "commercial advertising or promotion" element, given its failure to plead that Open Kitchen was McDonald's' product or that the Field Brief was "commercial speech."

2)      If the Lanham Act claim is dismissed (which it should be), only state law claims remain, for which the Court would not have independent jurisdiction.  The Court should accordingly dismiss the remaining state law claims under Rule 12(b)(1) and 28 U.S.C. § 1367(c).

3)      For at least the reasons set forth below in Parts VI.B & VI.C, Kytch also has not pled its FAL, UCL, IIBE, NIBE, or trade libel claims with the sufficient particularity required by Rule 9.  Nor, in any event, do any of the state law claims satisfy Rule 8.  Each of the state law claims, as further discussed below, fail to plead key elements.  Accordingly, the Court should alternatively dismiss the state law claims, with prejudice, under Rule 12(b)(6).

4)      To the extent that the Court does not dismiss Kytch's state law UCL claim, McDonald's requests a more definite statement of this claim under Rule 12(e), as it has no notice under which of the UCL's five separate bases for liability Kytch alleges McDonald's is at fault.

## IV.    FACTUAL BACKGROUND REGARDING KYTCH'S ALLEGATIONS

To summarize Kytch's allegations,[1] Kytch claims that its "innovative" KSD and KSP were a panacea for Taylor's supposedly finicky C602 ice cream machines ("C602") that led to repeatedly broken ice cream machines in McDonald's' restaurants.  Compl. ¶6.  The KSD and KSP enabled users to remotely operate the C602.  *Id.* ¶¶7, 78-80.

Kytch's confidential information claims[2] are premised on the following allegations.  Although Taylor and PHD began seeking information on Kytch in 2019 to aid in the development

---

[1] McDonald's omits qualifiers (such as "allegedly") herein for clarity.  For purposes of this Motion only and as required under the FRCP, McDonald's accepts as true the factual allegations.
[2] Claims of tortious interference with contract, IIBE, and NIBE (in part).  *Id.* ¶¶283, 330, 340.

of their competing IoT solution (*id.* ¶¶116-126), *McDonald's* first became involved on or about February 12, 2020, when it learned of Kytch at which time it began working with Taylor and Gamble to obtain information on the KSD and KSP. *Id.* ¶¶140-41, 144-151. Gamble joined the Kytch Trial at McDonald's' and Taylor's behest and signed a KTA on March 19, 2020, which prohibited him from disclosing information on Kytch's products or using Kytch information to assist third parties in developing a competing device. *Id.* ¶¶151, 157, Ex. 1 (Gamble's KTA). Gamble began sharing information with McDonald's and Taylor in breach of the KTA such as screenshots of text alerts sent to consumers and a virtual tour of the *consumer-facing* user interface of the KSP in Spring and Summer 2020. *Id.* ¶¶159, 173-179.

Taylor and PHD used this information to fast-track the development of their competing product Open Kitchen and copy the KSP's user interface. *Id.* ¶¶180-181, 230-237. McDonald's and Taylor later enlisted Gamble, and two other franchisees with KTAs, to participate in focus groups where they compared unspecified features of Kytch to Open Kitchen. *Id.* ¶¶226, 228.

Kytch's false statement claims[3] are premised on the allegation that McDonald's, in a bid to slow Kytch's expansion into McDonald's' franchisees' restaurants and give more time for the development of Open Kitchen, fabricated safety concerns in cooperation with Taylor about KSD and broadcast them to the entire U.S. franchisee network via the Field Brief. *Id.* ¶¶25, 289-291, 301, 307, 330, 340, 349. The Field Brief stated that Kytch created a "potential very serious safety risk" and "potential equipment reliability issues," and that use of the "aftermarket 'add-on'" would "void any existing OEM warranty." *Id.* ¶307. The Field Brief further announced that "Taylor planned to release Open Kitchen" by the "end of Q1 2021." *Id.* ¶291. The Field Brief did not allege any purported false statements about McDonald's' own products or services. *Id.* ¶¶288-

---

[3] Claims under Lanham Act § 43(a), FAL, UCL, trade libel, IIBE, and NIBE (in part).

291.

## V.    **LEGAL STANDARD**

To survive a motion to dismiss under 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 8. Though a court must accept all factual allegations in the complaint as true, that "tenet… is inapplicable to legal conclusions." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility." *Id.* (quoting *Twombly*, 550 U.S. at 557). A complaint has to show entitlement to relief with its facts. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

For certain claims and allegations—such as claims sounding in fraud or for special damages—Rule 9 has special pleading requirements. Fed. R. Civ. P. 9(b), (g); *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 197 (3d Cir. 2007) (Rule 9(b) applies to claims *sounding in* fraud). Kytch's pleading must provide specifics regarding the alleged fraudulent acts, as well as any elements of the claim premised on the same circumstances as the alleged fraud. *Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 530 (D. Del. 2012); *Ninespot, Inc. v. Jupai Holdings Ltd.*, C.A. No. 18-144-RGA, 2019 WL 1650065, at *4 (D. Del. Apr. 17, 2019). For example, to the extent that Kytch's claims are dependent on agency liability premised on the same circumstances as the alleged fraud, Kytch must plead that agency relationship with particularity under Rule 9(b). *Ninespot*, 2019 WL 1650065, at *4.

To determine if a claim sounds in fraud, the court looks to the "specific factual allegations upon which [the count] is based" to determine if the allegations charge the defendant with intentionally misrepresenting facts. *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 287 (3d Cir. 1992); *see also Gilmour v. Bohmueller*, C.A. No. 04-2535, 2005 WL 241181 (E.D. Pa. Jan. 27, 2005)

(applying 9(b) to tortious interference claim); *Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*, 684 F. Supp. 2d 541, 546 (D. Del. 2010) (applying 9(b) to common law unfair competition claim); *Registered Agent Sols., Inc. v. Corp. Serv. Co.*, C.A. No. 21-786-SB, 2022 WL 911253, at *2 (D. Del. Mar. 28, 2022) (applying 9(b) to Lanham Act claim).  Kytch's Field Brief claims necessarily are premised on a "false or misleading description [or representation] of fact."  Lanham Act § 43(a)(1); *see also* Cal. Bus. & Prof Code § 17500 (statement must be "untrue or misleading"); Compl. ¶¶291, 301, 307, 330, 349.  Thus, Kytch's Field Brief claims are subject to Rule 9(b).  Even if Rule 8 applies, Kytch's claims still fail.

Rule 12(e) allows a defendant to request clarification of an ambiguous pleading so that it can prepare a meaningful response.  Fed. R. Civ. Proc. 12(e).  Such a motion is proper where the issues a defendant must respond to cannot be determined.  *Holmes v. Colonial Sch. Dist.*, C.A. No. 09-795-GMS, 2010 WL 4918721, at *1 (D. Del. Nov. 24, 2010).

## VI.   ARGUMENT

### A.   Kytch's Lanham Act Claim Fails Because Kytch Cannot Plausibly Allege A Commercial Advertisement or Promotion

Lanham Act § 43(a) prohibits "any person" from, among other things, making a "false or misleading description of fact" that, "*in commercial advertising or promotion*, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's" product. "Commercial advertising or promotion … consists of (1) *commercial speech*; (2) by a defendant in commercial competition with the plaintiff; (3) designed to influence customers to buy the *defendant's products*; (4) that is sufficiently disseminated to the relevant purchasing public to constitute advertising or promotion within the industry."[4] *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F.

---

[4] There is a debate among courts as to the validity of the "commercial competition" element after *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) held that a Lanham

Supp. 2d 570, 575 (E.D. Pa. 1999), *aff'd*, 229 F.3d 1139 (3d Cir. 2000) (emphases added); *Reybold Grp. of Companies, Inc. v. Does 1-20*, 323 F.R.D. 205, 210 (D. Del. 2017) (dismissing complaint for failure to adequately allege commercial speech and "defendant's product" elements). Kytch's claim fails on at least the first and third elements.

### 1. The Field Brief Did Not Concern Defendant's Product (Element 3)

Kytch's Lanham Act claim fails on the defendant's product element because the Field Brief is not about McDonald's' product but is about Open Kitchen and Kytch. Compl. ¶206. Moreover, Kytch admits throughout its Complaint that Open Kitchen was developed and sold by Taylor or its affiliate PHD. Compl. ¶¶117, 123, 126, 130, 132, 142-43, 155-56, 230-37, 248 (describing how Taylor and PHD developed Open Kitchen and how PHD promoted it for sale). McDonald's is in the business of selling burgers, fries, and franchises (*id.* ¶¶1, 133-34)—and the Field Brief is clearly *not* proposing that its recipients purchase any of those products  *See id.* ¶ 25 (Field Brief was directed to McDonald's' U.S. franchisees); *id.* ¶¶206-07 (Field Brief text). This defect alone warrants dismissal of Kytch's claim under Rule 8, let alone Rule 9(b). *Reybold*, 323 F.R.D. at 210 (dismissing Lanham Act claim where alleged advertisement did not concern defendant's products); *CHW Grp., Inc. v. Better Bus. Bureau of New Jersey, Inc.*, C.A. No. 11-3261-JAP, 2012 WL 426292, at *4 (D.N.J. Feb. 8, 2012) (same).

Kytch tries to obfuscate the true nature of Open Kitchen as Taylor and PHD's product by vaguely referring to it as a collective product of McDonald's and Taylor.  *See* Compl. ¶¶12-13, 15-16, 29.  However, merely referring to Open Kitchen as such does not plausibly demonstrate

---

Act false advertising plaintiff need not demonstrate direct competition to have standing to assert a claim.  *Ariix, LLC v. NutriSearch Corporation*, 985 F.3d 1107, 1120 (9th Cir. 2021) (requirement likely abrogated); *Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1268 (10th Cir. 2020) (requirement survives).  McDonald's takes no position on that debate at this point and does not rely on the direct competition requirement for purposes of this Motion.

that McDonald's makes and sells Open Kitchen.  Courts frequently reject such pleading attempts to conflate separate entities.  *See Bret Binder v. Weststar Mortg., Inc*., C.A. No. 14-7073, 2016 WL 3762710, at *2 (E.D. Pa. July 13, 2016) (dismissing claims against defendant where plaintiff made blanket allegations as to all defendants but failed to make specific allegations as to that defendant); *Frompovicz v. Niagara Bottling, LLC*, 337 F. Supp. 3d 498, 508 (E.D. Pa. 2018) (dismissing False Advertising claims against two of four defendants where all were collectively referred to as "defendants" but there were only factual allegations about two).

No court in the Third Circuit has examined what interest a defendant must have in a product that it does not manufacture or sell to transform the product to the "defendant's" for purposes of the "commercial advertising or promotion" inquiry under the Lanham Act.  But the Third Circuit considering other aspects of Lanham Act claims has focused on whether the defendant has a direct financial benefit in the sales of the product.  *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.* ("*AT&T*"), 42 F.3d 1421, 1438 (3d Cir. 1994) (holding a principal could be liable for false designation of origin if an agent who committed the tort was authorized to act on the principal's behalf and the principal "*benefits financially*"); *cf. Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1012, 1016 & n.7 (3d Cir. 2008) (finding "commercial speech" for purposes of false advertising where defendant had a "*direct financial interest*" in the sales of another's product through a royalty agreement) (emphases added in all).

Kytch has not alleged facts showing McDonald's would be entitled to any share of the proceeds from sales of Open Kitchen.  Indeed, Kytch identifies no plausible financial benefit from Open Kitchen at all for McDonald's.  *See infra* Part VI.A.2.  In short, Kytch has not and cannot plausibly allege—let alone allege with the required particularity—that the Open Kitchen product discussed in the Field Brief is McDonald's' product for purposes of the Lanham Act.  Therefore,

its claim should be dismissed with prejudice.

### 2.      The Field Brief Was Not "Commercial Speech" (Element 1)

"The Lanham Act regulates only commercial speech." *Valley Forge Mil. Acad. Found. v. Valley Forge Old Guard, Inc.*, 24 F. Supp. 3d 451, 455 (E.D. Pa. 2014).  Commercial speech is "'speech which does 'no more than propose a commercial transaction.'" *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 66 (1983).  Courts consider three factors to make this determination, including: (1) is the speech an advertisement; (2) does the speech refer to a specific product or service; and (3) does the speaker have an economic motivation for the speech.  *See id.* at 66-67. No one *Bolger* factor is dipositive, although "[t]he combination of *all* these characteristics … provides strong support" for commercial speech."  *Bolger*, 463 U.S. at 67.  (emphasis added).

To begin with, Kytch has not alleged any plausible economic motivation for the Field Brief, let alone that McDonald's "sp[oke] substantially from economic motivation." *Cornette v. Graver*, 473 F. Supp. 3d 437, 461 (W.D. Pa. 2020).  As noted above, Kytch does not allege McDonald's would receive any direct financial benefit from the sale of Open Kitchen products.  *Id.* (no commercial speech where speech did not concern defendant's products); *see supra* Part VI.A.1.

Nor does Kytch plausibly allege an indirect economic motive for McDonald's.  Kytch's theory is dependent on the idea that (1) Taylor had a repair racket, (2) McDonald's somehow knew about it, and (3) McDonald's benefitted financially from this scheme because Taylor created "exclusive" kitchen products for McDonald's.  Compl. ¶¶5, 258-59.  Setting aside whether Kytch has plausibly alleged that Taylor had a "repair racket", Kytch alleges no *facts* to suggest that McDonald's was actually aware of this.  Further, Kytch's theory that McDonald's *condoned* any alleged misconduct out of a desire for exclusive products requires a vast leap in logic.  First, the Complaint admits that Taylor does not exclusively supply all McDonald's' restaurants.  *See id.* ¶52 ("Most McDonald's restaurants are equipped with Taylor Model C602").  Second,

McDonald's is a "world-famous" brand and "fast-food giant" (*Id.* ¶¶1, 4) with ample ability to negotiate exclusivity from its suppliers, if it desires, without the need to tolerate practices that harm its franchisees, consumers, its company-owned restaurants, and the McDonald's brand.  *See id.* ¶¶53-56 (detailing negative press McDonald's received on Taylor shake machines).  Further, as noted above it is not clear how McDonald's could have benefitted financially from this arrangement.  Accusations of alleged anticompetitive conduct such as the repair racket must be supported by *facts*, and Kytch has offered nothing but bare conclusions.  *See Twombly*, 550 U.S. at 565 (bare conclusions related to antitrust claims are not sufficient).

Finally, the Field Brief was not an "advertisement" in any sense.  As noted above, "advertising" implies that McDonald's was acting to sell its own products or services, and Open Kitchen is not McDonald's' product.  *See supra* Part VI.A.1.  Furthermore, the Field Brief email[5] was part of a weekly information-sharing email blast McDonald's uses to communicate important information to its franchisees on diverse subjects.  *See* Decl. of K. Wood ("Wood Decl.") Ex. 1. The statements on Kytch appeared among similar notices on "2021 Planning Tools" for franchisees, "Upcoming Promotion Updates," NFLA (a franchisee organization) officer nominations, and a "Webcast on Post 2020 [Presidential] Election Summary and Meaning," among multiple other topics unrelated to Kytch or Open Kitchen.  *Id.*  The Field Brief is clearly an informational newsletter for McDonald's' franchisees.  *Id.*  It is not an "advertisement."

The only factor that favors Kytch is that the Field Brief referred to Open Kitchen and to

---

[5] Because Kytch refers to this document in its Complaint and it forms an integral part thereof (indeed it is the basis for all but one of Kytch's claims), the Court may consider it on a motion to dismiss.  *See Hughes v. United Parcel Serv., Inc.*, 639 F. App'x 99, 103 (3d Cir. 2016); *GOLO, LLC v. HighYa, LLC*, 310 F. Supp. 3d 499, 506 (E.D. Pa. 2018) (considering content of websites where disparaging product reviews were posted in ruling on a motion to dismiss).  A redacted version of the Field Brief is attached to the Wood Declaration.  A copy of the unredacted, confidential document is available should the Court find it helpful.

the KSD.  However, courts have recognized that this factor, in and of itself, provides little insight.  *See, e.g.*, *Bolger,* 463 U.S. at 66 ("the reference to a specific product does not by itself render the pamphlets commercial speech").  At bottom, the Field Brief, when examined as a whole and in proper context, is nothing more than a franchisor sharing business information with its franchisees.  It is not commercial speech and is not actionable under the Lanham Act.

If the Court dismisses the Lanham Act claim, then the Court should exercise its discretion under 28 U.S.C. § 1367(c)(3) and dismiss Kytch's remaining state law claims, over which it lacks independent subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  As detailed *infra*, even if the remaining state law claims were not dismissed under Rule 12(b)(1), they should be dismissed under Rule 12(b)(6).

    **B.**    <u>**Kytch's Statutory State Law Claims Fail Under Rule 12(b)(6)**</u>

        **1.**    <u>**Kytch's FAL Claim Fails As A Matter Of Law**</u>

Kytch's FAL claim fails for the same reasons its Lanham Act claims fail and more.  *Rezec v. Sony Pictures Ent., Inc*., 116 Cal. App. 4th 135, 140 (2004), *disapproved of on other grounds by FilmOn.com Inc. v. DoubleVerify Inc*., 7 Cal. 5th 133 (2019) (FAL regulates "only commercial speech").  Similar to the Lanham Act, the FAL requires an intent to dispose directly or indirectly of goods or services—which Kytch has *not* alleged for McDonald's.  *See* Cal. Bus. & Prof. Code § 17500 (unlawful for entity "with intent [to] directly or indirectly to dispose of" property or services to disseminate untrue or misleading statements).  These defects alone require dismissal of the FAL.

There are several additional defects for Kytch's FAL claim.  First, Kytch has not and cannot allege that it *personally* relied on the alleged false advertisement to its detriment, as required by a majority of courts to consider FAL claims.  *See Redbox Automated Retail, LLC v. Buena Vista Home Ent., Inc.*, 399 F. Supp. 3d 1018, 1034 (C.D. Cal. 2019) (noting that "most courts" have

interpreted the FAL to require allegations of *personal* reliance, rather than third parties' reliance).

Furthermore, Kytch is entitled to only equitable relief under the FAL, and it has failed to plead a valid entitlement to such relief. The only remedies in private actions under the FAL are restitution and injunctions against future misconduct. *See* Cal. Bus. & Prof. Code ¶¶17500, 17535. For either, Kytch also must allege an inadequate remedy at law, which it has not done. *See Elizabeth M. Byrnes, Inc. v. Fountainhead Com. Cap., LLC*, No. CV-20-4149-DDP-RAOx, 2021 WL 3501518, at *3 (C.D. Cal. Aug. 6, 2021) (dismissing UCL and FAL claims because of failure to plead an inadequate remedy at law). Further, restitution under the FAL is limited to the return of money or property obtained by defendant in which plaintiff had a vested interest. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003). Mere loss of business is insufficient, and that is all Kytch claims. *Id*; Compl. ¶305. Finally, "[i]njunctive relief is not available when there is no threat that the misconduct to be enjoined is likely to be repeated in the future", which Kytch has not alleged. *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009).

### 2.   Kytch's Deceptive Trade Practices Claim (The UCL) Fails As A Matter Of Law

Kytch's UCL claim fails for a variety of reasons as well. First, the UCL has five separate bases for liability: conduct that is unlawful, unfair, fraudulent, false or deceptive advertising, or violations of the California FAL. *Id.* It is completely unclear which prong Kytch intends to proceed upon, and that dooms its claim—especially given that Kytch's claims sound in fraud and must be evaluated under Rule 9(b). Compl. ¶¶348-53; *see U.S. Cap. Partners, LLC v. AHMSA Int'l, Inc.*, No. 12-6520-JSC, 2013 WL 594285, at *4 (N.D. Cal. Feb. 14, 2013) (dismissing UCL claim that "[d]efendant's conduct 'constitutes unlawful, unfair and/or fraudulent business practices'" under 9(b) for failure to specify which prong and include factual allegations as to each).

But there are many other fatal defects for this count. Kytch's UCL claim fails because it

is subject to the same rules on remedies as the FAL claim.  *See* Part VI.B.1, *supra*; *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (plaintiff must show inadequate remedy of law to seek restitution under UCL).  Further, on the fraudulent or false or deceptive advertising prongs, Kytch has failed to plead personal reliance as required by a majority of courts to consider the issue.  *LegalForce RAPC Worldwide P.C. v. DeMassa*, No. 18-43-MMC, 2020 WL 4747909, at *4 (N.D. Cal. Aug. 17, 2020).  Nor has Kytch met the Rule 9 pleading standards required for this count.  And as with Kytch's Lanham Act and FAL claims, there is no "advertisement" here to support liability.  *NovelPoster v. Javitch Canfield Grp.*, No. 13-CV-5186-WHO, 2014 WL 10556991, at *15 (N.D. Cal. Aug. 14, 2014) (finding UCL fails where essentially identical basis for UCL and FAL).

For the unlawful prong, Kytch is required to show some violation of statute, regulation or common law, so to the extent its claim is premised on this prong, it fails with the rest of the Complaint as detailed herein.  *See Cullen v. Netflix, Inc.*, No. 5:11-1199-EJD, 2013 WL 140103, at *8 (N.D. Cal. Jan. 10, 2013).

Kytch's claim under the unfair prong fails as well.  Kytch fails to satisfy the "tethering" test used to evaluate UCL claims under the unfair prong[6].  Kytch must show that McDonald's conduct (1) "threatens an incipient violation of an antitrust law," (2) "violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law," or (3) "otherwise significantly threatens or harms competition."  *Cel-Tech Commc'ns, Inc. v. Los*

---

[6] UCL claims are normally brought by competitors or consumers of the alleged wrongdoer and are evaluated under specific tests referencing those categories of market participants.  The "tethering" test is generally used for competitor claims, while the "balancing" test is generally used for consumer claims.  *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735-36 (9th Cir. 2007).  Here, Kytch is neither a competitor of McDonald's nor a consumer of its services.  However, to the extent any test applies, it would be the tethering test as Kytch is clearly not a consumer of McDonald's' products.

*Angeles Cellular Tel. Co.,* 20 Cal. 4th 163, 187 (1999).  These findings of unfairness must be "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition."  *Id.* at 186-87.  But Kytch has not identified any such "policy *related to competition*" implicated by McDonald's' conduct.  *Facebook, Inc. v. BrandTotal Ltd.*, No. 20-CV-7182-JCS, 2021 WL 3885981, at *7 (N.D. Cal. Aug. 31, 2021).  Nor has it shown any harm to competition.  To do that, Kytch must "identify a product market," *Facebook, Inc. v. Brandtotal Ltd.*, No. 20-CV-7182-JCS, 2021 WL 2354751, at *15 (N.D. Cal. June 9, 2021), and allege the "degree of competition in the market," *Facebook*, 2021 WL 3885981, at *10.  It has failed to do so.

If, however, the Court declines to dismiss Kytch's UCL claim, Kytch should be ordered to provide a more definite statement of the basis for its claim under Rule 12(e).  *See Fox Hollow of Turlock Owners' Ass'n v. Sinclair,* No. 1:03-CV-5439, 2007 WL 987873, at *5 (E.D. Cal. Mar. 30, 2007); *Mou v. SSC San Jose Operating Co. LP*, 415 F. Supp. 3d 918, 928-–29 (N.D. Cal. 2019) (more definite statement appropriate when unclear which prong of the UCL plaintiff relied upon).

### C.     <u>Kytch's State Common Law Claims Fail As A Matter Of Law</u>

#### 1.     <u>California Law Should Apply</u>

As a threshold matter, Kytch is not specific about which law should apply to its state common law claims.  However, Kytch is based in California and its alleged injuries were felt there.  Compl. ¶120.  While Kytch's claims fail under *either* Delaware or California law, the facts of this case, and Kytch's allegations in this case and related litigation, demonstrate that California law should apply to the extent any conflict exists.  For example, Kytch asserts a negligent interference claim (Compl. ¶¶337-47)—which is not recognized under Delaware law but is recognized under California law.  *OC Tint Shop, Inc. v. CPFilms, Inc.*, C.A. No. 17-1677-RGA, 2018 WL 4658211, at *5 (D. Del. Sept. 27, 2018) (Delaware not recognizing the claim); *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 805 (1979) (California recognizing negligent interference).  And because Kytch's

intentional interference with business expectancy and trade libel claims are premised on the same facts, actors, actions, relationships, and injuries (*see* Compl. ¶¶306-36), the same law should apply to those claims. *See Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991) (Delaware applies the Restatement (Second) of Conflict of Laws); Restatement (Second) of Conflict of Laws §§ 145, 150, 151.[7]

In addition, Kytch has sued Taylor, Gamble, and TFGroup for tortious interference, trade secret misappropriation, and breach of contract (for Gamble only) in California, premised on the *exact same* facts Kytch alleges in support of its tortious interference with contact claim against McDonald's. Compl. ¶237 & n.17; Wood Decl. Ex. 2, ¶¶ 218-265 (Kytch's Original Complaint in the California action). The Court may take judicial notice of these records. *See Acierno v. Haggerty*, C.A. No. 04-1376-KAJ, 2005 WL 3134060, at *6 (D. Del. Nov. 23, 2005). Kytch also sought injunctive relief under California law. Wood Decl. 3 at 1, 3-4. In short, this case is an outgrowth of Kytch's California litigation, based on the same facts, actors, actions and injuries. The mere fact that Kytch chose to file this case in a different court should not entitle Kytch to a different result (to the extent the Court would reach a different result under Delaware law). *See* Restatement (Second) of Conflict of Laws § 6(2)(f) (courts should consider predictability and uniformity of result in resolving conflicts—including prevention of forum shopping[8]).

---

[7] Indeed, Kytch just moved for leave to amend its California complaint to add identical claims against Taylor, Gamble, and TFGroup to those it asserts in this action, plus one additional California statutory claim and one additional breach of contract claim (against TFGroup). *See* Wood Decl. Ex. 4 (Declaration of Daniel P Watkins ISO Kytch's Mot. for Leave to File First Am. Compl., ¶¶ 10-36; *Id.* Ex. A (Kytch's proposed First Am. Compl. ¶¶ 456-515)).

[8] Kytch's decision to file in Delaware was likely due to the fact that the California court took a dim view of Kytch's trade secrets claims against Taylor and TFGroup—denying a preliminary injunction on the grounds that Kytch had failed to show that it possessed trade secrets or that the information Taylor, TFGroup, or McDonald's received would have been useful in developing Open Kitchen. Wood Decl. Ex. 3 at 9-12.

**2.      Kytch's Tortious Interference With Contract Claim Fails Because
Kytch Cannot Plausibly Allege Knowledge of the Contracts**

To state an interference with contract claim under both Delaware and California law, Kytch

must allege facts to demonstrate that McDonald's knew not only the existence of the agreements

with specific customers, but also enough about the contents of such agreements to know that its

conduct would interfere with the contract. *Winchester Mystery House, LLC v. Glob. Asylum, Inc.*,

210 Cal. App. 4th 579, 597 (2012) (claim could not stand where plaintiff failed to show defendant

knew details of a contract sufficient to provide knowledge that defendant's conduct would result

in a breach or interference); *Anesthesia Servs., P.A. v. Anesthesia Advantage, P.C.*, C.A. No.

N11C-03-005-MJB, 2013 WL 3352672, at *6 (Del. Super. Ct. June 27, 2013) (requiring actual

knowledge of both the contract and the specific restriction). Kytch cannot meet its burden here.

Kytch alleges McDonald's interfered with the KTAs by seeking confidential information

from the Kytch trial participants. Compl. ¶¶282-83. But the only facts Kytch alleges to

demonstrate McDonald's' knowledge of the KTAs are: (a) McDonald's knew Taylor had

attempted to "obtain a [Kytch] device" and had been "unsuccessful in doing so" (*id.* ¶149); (b) that

McDonald's kept track of which franchisees had a Kytch device (*id.* ¶283, 329); and (c) that

"McDonald's" reviewed a KTA in Spring of 2020 (*id.* ¶¶33, 282). As to the first allegation,

McDonald's' alleged knowledge of Kytch's refusal to sell a KSD to Taylor is a far cry from

knowledge that Kytch was entering into KTAs with its customers that prohibited certain

disclosures of information.

As to the second allegation, Kytch states McDonald's was "paying close attention to

McDonald's operators' adoption of the KSD and that Taylor and TFG used their network of repair

technicians to systematically identify machines to which a KSD was attached." *Id.* ¶329. This

statement is insufficient to demonstrate knowledge of the specific *contracts* at issue. At most, it

shows that McDonald's was aware these franchisees had KSDs; it does not plausibly demonstrate that McDonald's had knowledge of the *KTAs*, let alone the specific non-disclosure provisions Kytch alleges were breached.

Finally, Kytch's vague allegation that "McDonald's" reviewed a KTA in Spring 2020 is insufficient to make a plausible showing that "McDonald's"—as an organization—had knowledge of the specific contracts with which it interfered.  Compl. ¶¶33, 282.  This allegation does not plausibly show that McDonald's knew that any of the third parties such as Gamble had executed a KTA.  Moreover, there are no plausible allegations that review by an unknown and unidentified person at McDonald's of an unknown KTA somehow binds a very large organization—let alone one that is a "fast-food giant."  *Id.* ¶4.  Under these circumstances, the mere conclusory allegation that "McDonald's" reviewed the contract is not enough to make a plausible allegation of knowledge.  Kytch must allege that the review was by someone with sufficient authority to impute knowledge to the corporation as a whole—not just a restaurant crew member or general manager— and this Kytch cannot do.  *Hecksher v. Fairwinds Baptist Church, Inc.*, 115 A.3d 1187, 1200-01 (Del. 2015) (knowledge can be imputed to employer only where employee has "authority to act" on the knowledge); *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 679 (2005) (same).

### 3. Kytch's Intentional Interference with Business Expectancy ("IIBE") Claim Fails Because Kytch Does Not Plausibly Allege Knowledge Of The Specific Relationships At Issue

The IIBE claim requires knowledge of *specific relationships* with which Defendant's actions allegedly interfered.  *See Home Decor Ctr., Inc. v. Google, Inc.*, No. CV 12-5706-GW-SHx, 2013 WL 10858861, at *9 (C.D. Cal. May 9, 2013) (although plaintiff alleged that Google knew people visited its website, "this evidence does not establish that Google knew of specific parties with whom Plaintiff had a probability of future economic benefit."); *Accenture Glob. Servs.*

17

*GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 665 (D. Del. 2008) (dismissing claim because plaintiff "does not specifically allege that [defendant] had knowledge of its dealings with [third party].").

Kytch identifies no specific relationships in this claim; instead it merely states that Kytch "developed valuable contractual and other business and economic relationships with McDonald's franchise operators." Compl. ¶328. The *only* fact that Kytch offers is that McDonald's paid "close attention" to franchisees' adoption of Kytch and "Taylor and TFG used their network of repair technicians to systematically identify machines to which a KSD was attached." *Id.* ¶329. Even if McDonald's "paid attention", that does not establish McDonald's was aware of the relationships with these specific franchisees. *Home Decor*, 2013 WL 10858861, at *9; *Accenture*, 581 F. Supp. 2d at 665. Similarly, even if Taylor and TFGroup were aware of the specific relationships, Kytch does not allege they shared that information with McDonald's. Compl. ¶329. In short, this claim fails to make the leap from merely possible to plausible on the knowledge requirement—and fails to plead this claim (which sounds in fraud) with particularity. Further, under California law, Kytch is required to allege an act that is independently wrongful by "some legal measure other than the fact of interference of itself" to state a claim for IIBE—thus, this claim stands or falls with all of its other claims. *Korea Supply*, 29 Cal. 4th at 1161. Because Kytch's other claims fail, its IIBE claim similarly fails.

### 4.     Kytch's Negligent Interference Claim Fails Because Kytch Does Not Sufficiently Allege Any Business Relationships

Because a NIBE claim requires an independently wrongful act, this claim falls with all of its other claims. *Nat'l Med. Transp. Network v. Deloitte & Touche*, 62 Cal. App. 4th 412, 440 (1998). Kytch is also required to allege specific, existing relationships that might mature into contractual or profitable business relationships that McDonald's interfered with. *Santa Fe*

*Properties, LP v. Source Bioscience, Inc.*, No. CV20-10727-JFW-PVCx, 2021 WL 6104156, at *3 (C.D. Cal. Feb. 10, 2021). Kytch makes the same vague allegation it did for the IIBE claim—that McDonald's paid attention to its franchisees and that Taylor and TFGroup were aware of which machines had a KSD; these allegations are nowhere near the standard of plausibility and must fail for the same reasons as the IIBE claim. *See* Compl. ¶ 340; Part VI.C.3, *supra*. Further, Kytch is required to allege facts demonstrating McDonald's had a "special relationship" with Kytch such that imposition of a duty is justified. *4NYSYS Amer. Inc. v. Koninklijke Philips Elec. NV*, C.A. No. 2:11-CV-6075-JHN-MANx, 2012 WL 13008980, at *4 (C.D. Cal. Jan. 23, 2012) (dismissing negligent interference claim for failure to allege this element). The most Kytch's Complaint includes is a bare conclusion that McDonald's owed Kytch such a duty. But that is not good enough under *Twombly* and *Iqbal*. And given the allegations throughout the Complaint about the lack of relationship between Kytch and McDonald's, it would not be plausible to even allege any such special duty.

### 5.    Kytch's Trade Libel Claim Fail Because Kytch Failed To Plead Special Damages With Particularity Under Rule 9(g)

Special damages are an element of trade libel under California and Delaware law. *Royal Holdings Techs. Corp. v. IP Video Mkt. Info Inc.*, No. 2:20-CV-4093SB-PLAx, 2020 WL 8225666, at *11-12 (C.D. Cal. Dec. 18, 2020); *see Incyte Corp. v. Flexus Biosciences, Inc.*, C.A. No. N15C-09-55-MMJ-CCLD, 2017 WL 7803923, at *7 (Del. Super. Ct. Nov. 1, 2017) (applying Restatement (Second) of Torts § 623(A)); Restatement (Second) of Torts § 623A (1977) cmts. f, g (recovery is limited to "proved pecuniary loss" and "in injurious falsehood, pecuniary loss to the plaintiff must always be proved").[9]  Under Rule 9(g), special damages must be pleaded with

---

[9] To the extent Kytch argues that Delaware law differs from California law on this issue, California law applies. *See* Restatement (Second) of Conflict of Laws §§ 150, 151 (in multistate publication

particularity.  Kytch has not done so; it merely identified a partial list of customers it alleges refused to deal with Kytch because of the Field Brief, and that it suffered "enormous reputational and financial damage."  Compl. ¶¶312, 317.  This is insufficient under California law, Delaware law, and Rule 9(g).  *Royal Holdings*, 2020 WL 8225666, at *11-12 (dismissing claim for trade libel where a handful of specific customers or potential customers were identified and plaintiff alleged no specific damages tied to their loss).  Kytch must, at minimum, identify the specific customers it lost and the categories of pecuniary damages it suffered for the loss of each—if not the exact amounts.  *Passport Health, Inc. v. Travel Med, Inc*., No. 2:09-CV-01753-GEB-JFM, 2009 WL 3824743, at *6 (E.D. Cal. Nov. 16, 2009).

VII.    **CONCLUSION**

For the foregoing reasons, the Court should grant McDonald's' Motion.

Dated: April 22, 2022

<table>
<tr><td></td><td>YOUNG CONAWAY STARGATT<br> & TAYLOR, LLP</td></tr>
<tr><td></td><td><i>/s/  Anne Shea Gaza</i></td></tr>
<tr><td>Catherine Y. Lui<br>Nicole Gelsomini<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA 94105<br>(415) 773-5700<br>clui@orrick.com<br>ngelsomini@orrick.com</td><td>Elena C. Norman (No. 4780)<br>Anne Shea Gaza (No. 4093)<br>Samantha G. Wilson (No. 5816)<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>(302) 571-6600<br>enorman@ycst.com<br>agaza@ycst.com<br>swilson@ycst.com</td></tr>
<tr><td>Kristopher R. Wood<br>2050 Main Street, Suite 1100<br>Irvine, CA 92614<br>(949) 567-6700<br>kristopher.wood@orrick.com</td><td><i>Attorneys for Defendant<br>McDonald's Corporation</i></td></tr>
</table>

cases, courts should apply the law of plaintiff's principal place of business); *Aoki v. Benihana, Inc.*, 839 F. Supp. 2d 759, 766 (D. Del. 2012) (noting this is a "presumption").

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 22, 2022, a copy of the foregoing

document was served on the persons listed below in the manner indicated:

**<u>BY EMAIL</u>**

Brian E. Farnan
Michael J. Farnan
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Jason Sheasby
IRELL & MANELLA LLP
1800 Avenue of the Stars Suite 900
Los Angeles, CA 90067
jsheasby@irell.com

Elizabeth M. Locke, P.C.
Daniel P. Watkins
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
libby@clarelocke.com
daniel@clarelocke.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Anne Shea Gaza*
Elena C. Norman (No. 4780)
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
enorman@ycst.com
agaza@ycst.com
swilson@ycst.com

*Attorneys for Defendant McDonald's
Corporation*